## KEEFAUVER, ESTATE OF, In Re

Ohio Appeals, 2nd Dist, Darke Co

No 495.    Decided Jan 9, 1936

L. E. Kerlin, Greenville, for plaintiff in error, Ertie G. Keefauver White.

Wilbur D. Spidel, Greenville, and Herman Krickenberger, Greenville, for defendant in error, Laura E. Horner.

## OPINION

By HORNBECK, J.

It is the claim of counsel for Mrs. White, first, that actual manual delivery of the certificate during the lifetime of Mr. Keefauver was not necessary to pass the ownership to the $1000.00 represented by the certificate of deposit; and, second, if it is necessary, such delivery was properly made.

We are in no doubt whatever, granting to the trial court its prerogative to weigh the facts, that both claims of counsel for Mrs. White are well supported. It is not necessary to determine the narrow question whether or not at the time that the certificate of deposit was made in the name of Mrs. White by Mr. Keefauver the ownership of the money then passed to Mrs. White, because the record abundantly supports the theory of a completed gift by transfer of the certificate itself by Mr. Keefauver to Mrs. White.

The next question requires the determination of the effect of the evidence touching the ownership of the Nash automobile at the time of the preparation of the inventory. Mrs. White claims the Nash automobile by gift from her father, although he made no bill of sale for the car to her.

Counsel for the plaintiff in error claims failure of proof of a completed gift of the automobile but urged as a matter of law that inasmuch as Mrs. White had no bill of sale for the Nash automobile from Mr. Keefauver she could not take title because of the statutory provisions of §§6310-3 to 6310-14 GC providing for the giving of bills of sale and the registration of automobiles upon change of ownership.

In Credit Co. v Schreyer, 120 Oh St, 572, the 2nd proposition of the syllabus defines the effect upon ownership of an automobile of a failure to give a bill of sale in this language:

"These sections (§§6310-3 to 6310-14 GC) declare it to be unlawful to sell or give away a motor vehicle unless at or before such sale or gift the seller shall execute and deliver a bill of sale therefor, and prescribe other procedure in perfecting transfer of title. They do not declare the contract itself to be unlawful if executed in a manner other than that prescribed."

Chief Justice Marshall in discussing the question says at page 575 of the opinion:
"Being a penal statute, it must be strictly construed. That is to say, it should be construed according to its exact and technical meaning, recognizing nothing that is not expressed, and limiting its application to cases clearly within the words used. A careful study of the act shows that it does not declare any contract to be unlawful, but that it shall be unlawful to proceed in any except a prescribed way in executing the contract."

The Chief Justice further directs attention to the purpose of the act which is to prevent fraud and crime and to that end to require registration of automobiles.

The Schreyer case expressly overruled Ohio Farmers' Ins. Co. v Todino, 111 Oh St, 274, wherein the court had held that Mrs. Todino who had received an automobile as a gift from her husband without the execution and delivery of a bill of sale therefor was not the sole and unconditional owner.

This court in Gutridge v The State of Ohio, 9 Abs 305, held that a "sale of automobile consummated by delivery was valid as between parties, notwithstanding failure to deliver bill of sale."

See also Wiley, Exr. v Willey, 23 O.L.R., 305.

Though the possession of the bill of sale by Mr. Keefauver from the time of the purchase of the automobile until his death is not conclusive of the ownership thereof it would be sufficient standing alone and uncontradicted to support proof of title. It thus becomes necessary to consider some of the testimony tending to establish a gift of the automobile from Mr. Keefauver to Mrs. White.

The Nash automobile was the third car which Mr. Keefauver had purchased. Whether or not he drove the other cars does not appear but as to the Nash it develops that Mrs. White operated it almost exclusively and carried the keys to it.

The Whites and Mr. Keefauver lived in the same house and the garage appurtenant would store any automobile which they

night use without respect to ownership. Because of Mr. Keefauver's age and incidental infirmity it was inevitable that whether or not he owned the automobile some one would have to drive it for him if he rode in it. So that from the proof of the place of keeping the car, the operation thereof by Mrs. White and her possession of the keys we glean little of probative effect on the question of ownership although all of these facts are consistent with the claim that Mrs. White owned the car.

Mr. Keefauver talked freely to many of his friends respecting the ownership of the car. Mr. W. Bowers testified that Mr. Keefauver told him that he had bought the car for Ertie (Mrs. White). John White, husband of Ertie White, said that about the time the car was secured Mr. Keefauver related how he had told the dealer with whom the trade for the car was made that he bought the car for Ertie and many times thereafter said that "it belonged to Ertie." Mrs. Fannie Kester, a sister of Mr. Keefauver, said that before a certain visit to his home she had said to him that he should give the car to Ertie to which he replied "I intend to give it to Ertie." She further says that subsequent to the conversation just related she visited her brother at his home and spent the greater part of the day with him and that when alone with him on this occasion she said, "Ike, (addressing Mr. Keefauver) you should give Ertie that car." He said, "I did; I gave it to her and the baby. I intend to keep up the upkeep—after I am gone they can do it themselves." Charles Kaneui, an auto mechanic, said that on two occasions Mr. Keefauver said "I made it plain that I wanted her to have the car and everything under the roof." Lowell C. Sives related a conversation with Mr. Keefauver soon after he traded for the Nash in which he said "if Ertie wears this one out I will buy her another one."

W. D. Brumbaugh, Sr., an attorney at law, was called by Mr. Keefauver to his home about two weeks before his death. Mr. Brumbaugh testifies that Mr. Keefauver said that he wanted Ertie to have the automobile and in the conversation "I spoke to him about the bill of sale, whether it had been transferred to her." Mr. Keefauver was told that it would be necessary to have a bill of sale for the automobile made to Mrs. White and he instructed Mr. Brumbaugh to prepare it. Mr. Keefauver died before the bill of sale was made. It also appears that Mr. Keefauver carried the insurance on the car and paid all bills of

upkeep and operation as Mrs. Kester had testified he said he was expecting to do so long as he lived.

It will be noted that some of the statements of Mr. Keefauver related to a completed transaction in the gift of the automobile while some of them indicated a purpose in the future to complete the gift to her. The conversation with Mr. Brumbaugh upon first consideration would indicate that the gift was to be made and had not been completed. However, we glean from Mr. Brumbaugh's statement that it was his opinion that a bill of sale was necessary to complete the transfer and that would not be out of line with general opinion among lawyers and surely was safe and sound advice. The conversation with Mr. Brumbaugh in the light of all of the other testimony on the subject can be reconciled upon the theory that the gift to Mrs. White had been completed as far as it was possible for Mr. Keefauver to do so but that if required he also wanted to make the bill of sale.

Again granting to the trial court the prerogative of testing the witnesses and weighing the testimony we are of opinion that there is sufficient to support the finding and judgment that there was a completed gift of the Nash car by Mr. Keefauver to Mrs. White.

The judgment of the Common Pleas Court will be affirmed.

BARNES, PJ, and BODEY, J, concur.